UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| SHERRY KRISTJANSON, ) | |
| ) | |
| Plaintiff, ) | No. 16 cv 43 EJM |
| vs. ) | |
| ) | ORDER |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Plaintiff brings this action seeking judicial review of the Commissioner's denial of her application for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416, 423. Briefing concluded October 23, 2016. The court has jurisdiction pursuant to 42 USC §405(g). Reversed and remanded.

Plaintiff asserts the Administrative Law Judge (ALJ) failed to give proper controlling weight to the opinions of plaintiff's treating and examining psychiatrists, and that the Commissioner's decision is thus not supported by substantial evidence on the record as a whole.

> [R]eview of the agency decision is limited to whether there is substantial evidence on the record as a whole to support the [Commissioner's] decision…Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.

Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

On November 10, 2014, after a hearing, the ALJ found that although plaintiff suffered from degenerative disk disease, post-traumatic stress disorder (PTSD), and

depression, plaintiff's impairments did not constitute a "disability" as defined in the Social Security Act.

Upon review, it is the court's view that the ALJ failed to give appropriate weight to the opinions of the treating psychiatrist, Linda Madson, M.D., and the examining psychiatrist, Dr. Jeanette Oleskowicz. Dr. Madson initially saw Ms. Kristjanson on March 26, 2013 and has seen her monthly since. (A.R. 417; see A.R. 442, 455, 460, 474, 484, 485, 493.) On September 26, 2013, Dr. Madson responded to a mental impairment questionnaire. (A.R. 417). Diagnoses included major depressive disorder and a history of PTSD. Dr. Madson observed that Ms. Kristjanson was currently functioning well, but the doctor was concerned about a recurrence of symptoms if Ms. Kristjanson returned to work. Dr. Madson opined that Ms. Kristjanson's prognosis was good as long as she was not working. (A.R. 417). Dr. Madson found Ms. Kristjanson with seriously limited, but not precluded, in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress. Dr. Madson commented that Ms. Kristjanson had problems with absenteeism and handling work stress at her last job. (A.R. 419). According to Dr. Madson, Ms. Kristjanson's depression worsened her back and neck pain. (A.R. 420). Dr. Madson anticipated that, on the average, Ms. Kristjanson's impairments or treatment would cause her to be absent from work about three days a month. Depression adversely affected Ms. Kristjanson's grooming and showering and caused social isolation.

The ALJ simply found that mentally Ms. Kristjanson was limited to simple tasks. (A.R. 21). This assessment does not adequately take into account Ms. Kristjanson's mental limitations as opined by Dr. Madson.

2

The ALJ referred to Dr. Madson's report of August 16, 2013. (A.R. 25). In that report, Dr. Madson noted Ms. Kristjanson was no longer sleeping all day and her mood had improved due to medication changes, increased activity, and financial stability. (See A.R. 442). Global Assessment of Functioning (GAF) was 65. (A.R. 446). Three months earlier, though, Ms. Kristjanson's GAF was 50[1], consistent with disability. Even then, Ms. Kristjanson's mood had improved as she had been found 100% disabled and awarded veteran's "individual unemployability" benefits.

The ALJ noted Ms. Kristjanson's attorney argued that much of the claimant's improvement derived from not having the exertional and mental demands of full-time competitive work. (A.R. 25). The ALJ continued:

> The actual treatment records fail to show that either the claimant or her healthcare provider relate her improved symptoms to not having the exertional and mental demands of full-time competitive work.

(A.R. 25-26). Contrary to the ALJ's assertion, Dr. Madson's treatment notes expressly correlate Ms. Kristjanson's improved mental health with not working or, correlated a return to work with a relapse. On May 17, 2013, Dr. Madson reported:

> I talked to her about a wellness strategy that includes medications, steady sleep, exercise **and stress control**. I believe she should consider not working [to be one] part of her stress control program which will help to keep her stable the long run. **If she works, I fear that she is doomed to relapse even if we can get her into remission.**

---

[1] A GAF score of 41-50 represents:
*Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).*
DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000); see Pate-Fires v. Astrue, 564 F.3d 935, 938, 564 F.3d 935 (8th Cir. 2009); Banks v. Massanari, 258 F.3d 820, 831 (8th Cir. 2001)

3

(A.R. 478) (emphasis added).

The ALJ's reasons for discounting Dr. Madson's limitations are not legally sufficient. Dr. Madson's opinions are entitled to great, if not controlling, weight. The ALJ's failure to incorporate these limitations into his assessment of Ms. Kristjanson's residual functional capacity is error.

The record also includes two Compensation and Pension (C&P) evaluations[2] from Dr. Jeanette H. Oleskowicz. The first examination came from May 2011, prior to Ms. Kristjanson's alleged onset date. That exam concluded Ms. Kristjanson's major depressive disorder caused by two sexual assaults that occurred while Ms. Kristjanson was in the Navy and PTSD resulting from childhood abuse. The second, from March 2013 (after Ms. Kristjanson's alleged onset date), found Ms. Kristjanson quite limited functionally. The ALJ erred in failing to evaluate or give weight to Dr. Oleskowicz's opinions.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. Mrdalj v. Colvin, No. 6:15-cv-02009-JSS, 2015 WL 7871031, at *6 (N.D. Iowa Dec. 3, 2015), citing 20 C.F.R. § 404.1527(c). "Medical opinions" are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms,

---

[2] C&P examinations are designed to obtain fundamental information that will be necessary for the final adjudication of a claim for disability benefits from the DVA, including (where appropriate) the application of the VA Schedule for Rating Disabilities. C&P examinations for PTSD consist of a review of medical history; an assessment of the traumatic exposure or exposures; evaluations of mental status and of social and occupational function; and a diagnostic examination, which may include psychological testing or a determination of a Global Assessment of Functioning (GAF) score. National Academies Press, PTSD COMPENSATION AND MILITARY SERVICE 87, 88 (2007).

4

diagnosis and prognosis, what the individual can still do despite his or her impairment(s), and the individual's physical or mental restrictions. 20 C.F.R. §404.1527(a). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." Wiese v. Astrue, 552 F.3d 728, 731 (8th Cir. 2008). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" Wagner v. Astrue, 499 F.3d 842, 848 (8th Cir. 2007) (quoting Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In the first of two C&P exams, Dr. Oleskowicz assessed Ms. Kristjanson with PTSD related to childhood abuse and major depression related to her military sexual assaults. On May 4, 2011, Ms. Kristjanson saw Dr. Oleskowicz for a PTSD evaluation. (A.R. 316). Ms. Kristjanson's PTSD stressor event was being sexual assaulted twice while in the Navy. (A.R. 324). Dr. Oleskowicz noted daily depression, crying spells, mood swings, and anxiety with panic attacks. Ms. Kristjanson had no motivation and no interest in pleasurable activities (anhedonia). (A.R. 318). On mental status exam, Dr. Oleskowicz observed Ms. Kristjanson was easily tearful. (A.R. 321). Affect was constricted. Ms. Kristjanson's mood was anxious and depressed; she felt tired and stressed. She experienced persistent delusions of guilt. (A.R. 323). Ms. Kristjanson's obsessive/ritualistic behavior including plucking out leg hair with tweezers. (A.R. 323). Ms. Kristjanson forgot names and chores. (A.R. 324). As a result, Ms. Kristjanson never approached men she did not know. Dr. Oleskowicz noted Ms. Kristjanson's decreased

5

concentration and social isolation. (A.R. 328). Dr. Oleskowicz concluded Ms. Kristjanson's diagnoses were PTSD and a major depressive disorder and that the PTSD was not service-connected though the depression secondary to military sexual assault was. (A.R. 330; see A.R. 334).

In the second C&P exam, Dr. Oleskowicz addressed the nature and severity of Ms. Kristjanson's depression. On March 12, 2013, Dr. Oleskowicz performed a second Compensation and Pension (C&P) exam. Prior to this evaluation, and apparently based on Dr. Oleskowicz's prior evaluation, (A.R. 518). Dr. Oleskowicz assigned a GAF score of 49, consistent with disability. In explaining this GAF score, Dr. Oleskowicz stated:

> This female veteran meets the diagnosis for recurrent major depressive disorder and Alcohol Abuse, in sustained full remission. Veteran reports daily depressed mood, anhedonia, easy tearfulness, reduced motivation/concentration along with sleeping disturbances and high anxiety/panic attacks. She also reports significant mood ability. Veteran lives alone in a mobile home without social supports other than her sister, with whom she fights and argues a lot. Veteran is single, never married, does not date and engages in no outside/community activities. She is in psychiatric treatment, is on psych meds [medications], and overall is a reliable historian. Currently she is unemployed and has reported occupational difficulties to include reduced concentration and trying to control things. Veteran has both social and occupational impairment.

(A.R. 519). Dr. Oleskowicz concluded Ms. Kristjanson experienced occupational and social impairment with reduced reliability and productivity. (A.R. 520).

The ALJ mentioned Dr. Oleskowicz's second C&P exam just once. (A.R. 23). The ALJ failed to acknowledge or discuss Dr. Oleskowicz's opinions regarding the nature and severity of Ms. Kristjanson's depression. This is also error.

The Eighth Circuit recently explained when controlling or substantial weight is to be afforded to treating or examining physician opinions:

> The ALJ must give "controlling weight" to a treating physician's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Wagner v. Astrue*, 499 F.3d 842, 848–49 (8th Cir.2007) (internal quotation marks and emphases omitted). See S.S.R. 96–2p, Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996) ("Not inconsistent . . . is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."). "Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir.2007). It may have "limited weight if it provides conclusory statements only, or is inconsistent with the record." *Id.* (citations omitted). The ALJ "may discount or even disregard the opinion ... where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir.2015).

Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015).

The Eighth Circuit has explicitly held that an ALJ cannot rely on the claimant's ability to perform limited functioning during a period of low stress as substantial evidence that a claimant who sometimes experiences high stress is not disabled:

> Given the unpredictable course of mental illness, "[s]ymptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir.1996). Moreover, "[i]ndividuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). "Such individuals may be much more impaired for work than their signs and symptoms would indicate." *Id.*

7

Hutsell v. Massanari, 259 F.3d 707 (8th Cir. 2001). The ALJ did not properly consider the impact stress had on plaintiff's ability to function, which led to an improper rejection of Dr. Madson's and Dr. Oleskowicz's opinions, and plaintiff's claim for disability benefits.

The ALJ's reasons for assigning Dr. Madson's and Dr. Oleskowicz's opinions little weight are not supported by substantial evidence. The ALJ was, in effect, substituting his judgment for the opinion of plaintiff's treating physicians. The Court of Appeals has said many times that is error. See, e.g. Easter v. Bowen, 867 F.2d 1128, 1131 (8th Cir.1989); Bergquist v. Astrue, 818 F. Supp. 2d 1125. 1131-32 (S.D. Iowa 2011). Because Dr. Madson's and Dr. Oleskowicz's limitations and opinions are well-supported by the record as a whole, they should have been afforded controlling weight. A remand is required so the ALJ can properly evaluate and take into account the opinions of Doctors Madson and Oleskowicz.

It is therefore

ORDERED

Reversed and remanded for further proceedings in accordance herewith.

October 28, 2016

Edward J. McManus, Judge
UNITED STATES DISTRICT COURT